IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

JANUARY 1999 SESSION

FILED

May 4, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | * | C.C.A. No. 03C01-9803-CR-00111 |
| Appellee, | * | SULLIVAN COUNTY |
| VS. | * | Hon. R. Jerry Beck, Judge |
| DANIEL NORRIS, | * | (Sentencing) |
| Appellant. | * | |

For Appellant:

Julia A. Martin
P.O. Box 426
Knoxville, TN  37901-0426
(on appeal)

Terry L. Jordan
Assistant Public Defender
266 Blountville Bypass
Blountville, TN  37617

For Appellee:

John Knox Walkup
Attorney General and Reporter

Elizabeth B. Marney
Assistant Attorney General
425 Fifth Avenue North
Second Floor, Cordell Hull Building
Nashville, TN  37243

Teresa Murray-Smith
Assistant District Attorney General
P.O. Box 526
Blountville, TN  37617

OPINION FILED:_____

AFFIRMED

GARY R. WADE, PRESIDING JUDGE

## OPINION

The defendant, Daniel Norris, entered a plea of guilt to attempted rape of a child, a Class B felony. Tenn. Code Ann. §§ 39-12-101, -107(a), & 39-13-522. The trial court imposed a Range I sentence of eight years. The single issue for review is whether the trial court erred by denying an alternative sentence.

We affirm the judgment of the trial court.

In March of 1997, the defendant engaged in consensual sexual intercourse with the twelve-year-old victim, whom he had met at a bowling alley. The incident occurred at the victim's residence while her mother was not at home. Although initially charged with rape of a child, the state reduced the charge against the defendant to attempted rape of a child.

When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991); see State v. Jones, 883 S.W.2d 597 (Tenn. 1994). The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence.

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the

2

nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, and -210; State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

Among the factors applicable to the defendant's request for probation are the circumstances of the offense, the defendant's criminal record, social history, and present condition, and the deterrent effect upon and best interest of the defendant and the public. State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978). Especially mitigated or standard offenders convicted of Class C, D, or E felonies are, of course, presumed to be favorable candidates "for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6). With certain statutory exceptions, none of which apply here, probation must be automatically considered by the trial court if the sentence imposed is eight years or less. Tenn. Code Ann. § 40-35-303(b). The ultimate burden of establishing suitability for probation, however, is still upon the defendant. Tenn. Code Ann. § 40-35-303(b).

At the sentencing hearing, the defendant's mother Shirley Ann Boyd, testified that he could reside with her if he were granted an alternative sentence. While acknowledging that the defendant had failed to comply with conditions of probation for an earlier sentence, she promised to try to help the defendant attend meetings and otherwise conform to any conditions of release. Ms. Boyd testified that the defendant might be able to obtain employment with his former employer, Piccadilly Restaurant.

3

The defendant, twenty-one years old at the time of sentencing, has a history of misdemeanor convictions, including assault. He has a lengthy juvenile record. At the sentencing hearing, he claimed that he was unaware that the victim was under thirteen years of age when he met her. He maintained that he was willing to undergo treatment if granted an alternative sentence and that he believed he could obtain employment with his former employer. He stated that eight months of incarceration had taught him to "think more" before he acted. The defendant admitted that he lost his job at Piccadilly because he had become involved in an argument in the shopping mall. In consequence, he was barred from the premises. He testified that he drank five or six beers per day and on occasion used marijuana. Although he participated briefly in a substance abuse treatment program as a juvenile, the defendant has not done so since reaching adulthood. He has several prior alcohol-related convictions and acknowledged having "a tiny bit" of a substance abuse problem.

Henry Bobletts testified that he was with the defendant and the victim on the evening of the offense. He stated that, while the victim claimed to be eighteen years old, she appeared to be as much as twenty.

The trial court ordered a risk assessment to evaluate the defendant's propensity to reoffend. During the interview with Counseling and Consultation Services, Inc., the defendant admitted to having exposed his genitals to a stranger in the past. The reporter concluded that the defendant's risk to reoffend was within the low to moderate range. The defendant received a low score in his ability to recognize his problem and in his ability to understand in what manner he had harmed the victim. The reporter recommended as follows:

> 1. [The defendant] is considered to be a low-moderated risk to re-offend. Without sufficient interventions which

limit his access to sexually act out, it is very likely that [he] will continue to sexually act out.

2. [The defendant] presently is a fair candidate for treatment at this time. His primary sexually offensive behavior is child molestation[,] which Specialized Sex Offender Treatment has demonstrated success. His other sexual offending behaviors, exposing [himself], is more difficult to treat.

3. The level of therapeutic intensity needed to adequately address [the defendant's] sexual offending is considered low-moderate. Thus, it is recommended that he be treated in an out-patient treatment program which specializes in sexual offending.

4. [The defendant] will require intensive supervision in the community. This would include Polygraph Examinations and high level of accountability to Probation, Parole and his Treatment Team. He would need to engage a significant individual (family/ally) in his treatment process.

According to the pre-sentence report, the defendant, who completed the ninth grade, began using alcohol at the age of fourteen. He was considered an alcohol abuser at the time of his incarceration. He also admitted to past use of speed and marijuana. The defendant has worked for two to six months at a time in the food service industry. He has a lengthy adult criminal record, including misdemeanor convictions for public intoxication, driving on a revoked license, driving on a suspended license, theft up to $500, possession and distribution of intoxicating liquors by a person under twenty-one, assault, disorderly conduct, and a number of traffic offenses. As a juvenile, the defendant appeared in juvenile court for truancy, larceny, breaking and entering, destruction of public property, contempt of court, trespassing, and assault. His criminal history as both a juvenile and an adult suggests an unwillingness to adhere to the terms of probation. In 1992, the juvenile court placed him in a mental health and substance abuse treatment program. After two months of disruptive behavior, including inhaling gasoline, threatening the staff

and other residents with violence, and five reported sexual encounters with resident females, the defendant was discharged from the program.

At the conclusion of the sentencing hearing, the trial court concluded that the defendant was a low to moderate risk to reoffend. While determining that the defendant, although youthful, had a "long history of petty offenses," the trial court also noted the defendant's poor academic performance, his history of alcohol abuse, and his use of illegal drugs. His social history was characterized as "not good" and his work history as "sporadic." The trial court ruled that the defendant's juvenile record, described as "extremely negative," indicated his inability to "act properly." While observing that the victim's mother did not oppose an alternative sentence, the trial court denied probation and refused to consider community corrections, characterizing the offense as "violent."

The defendant contends that the trial court failed to make adequate findings and conclusions, failed to properly consider the defendant's potential for rehabilitation, and failed to consider treatment within the community under Tenn. Code Ann. § 40-36-106(c). The 1989 Act provides that the record of the sentencing hearing "shall include specific findings of fact upon which application of the sentencing principles was based." Tenn. Code Ann. § 40-35-209(c). The trial court did not state a statutory basis for denial of probation. Nonetheless, the factual determinations of the trial court and other portions of the record are adequate to support the denial of probation.

While an eight-year sentence does not disqualify the defendant from probation, he is not presumed to be a favorable candidate for alternative sentencing because he was convicted of a Class B felony. Tenn. Code Ann. § 40-35-102(6).

6

Confinement is often necessary to protect the public from the conduct of the defendant, to avoid depreciating the seriousness of an offense or to provide a deterrent to others likely to commit a similar offense, or because measures less restrictive have recently or frequently been applied unsuccessfully to the defendant. Tenn. Code Ann. § 40-35-103(1). The record here supports the trial court's conclusion that the defendant was not amenable to rehabilitation due to his prior criminal convictions, a history of probation violations, and an extensive juvenile record. His social, employment and work history are poor.

A lack of candor may also militate against a grant of probation. State v. Bunch, 646 S.W.2d 158 (Tenn. 1983). Furthermore, acceptance of responsibility is often an important first step towards a rehabilitation. The mental health evaluation indicated that the defendant had neither taken full responsibility for his actions nor could he comprehend how his actions had affected the victim. In addition, the defendant, who admitted to only "a tiny bit" of a substance abuse problem, has not yet acknowledged the full extent of his alcohol abuse. While he maintained that he had not known the actual age of the victim, he stipulated otherwise at the plea submission hearing. Finally, the defendant has not demonstrated any basis upon which to conclude that he is a favorable candidate for probation.

Next, the defendant contends that the trial court erred by refusing to consider a sentence within the community corrections program. The purpose of the Community Corrections Act of 1985 was to provide an alternative means of punishment for "selected, nonviolent felony offenders in front-end community based alternatives to incarceration." Tenn. Code Ann. § 40-36-103. The Community Corrections sentence provides a desired degree of flexibility that may be both

beneficial to the defendant yet serve legitimate societal aims. State v. Griffith, 787 S.W.2d 340, 342 (Tenn. 1990). Even in cases where the defendant meets the minimum requirements of the Community Corrections Act of 1985, the defendant is not necessarily entitled to be sentenced under the Act as a matter of law or right. State v. Taylor, 744 S.W.2d 919 (Tenn. Crim. App. 1987). The following offenders are eligible for Community Corrections:

> (1) Persons who, without this option, would be incarcerated in a correctional institution;
>
> (2) Persons who are convicted of property-related, or drug/alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 2 [repealed], parts 1-3 and 5-7 or title 39, chapter 13, parts 1-5;
>
> (3) Persons who are convicted of nonviolent felony offenses;
>
> (4) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;
>
> (5) Persons who do not demonstrate a present or past pattern of behavior indicating violence;
>
> (6) Persons who do not demonstrate a pattern of committing violent offenses; and
>
> (7) Persons who are sentenced to incarceration or on escape at the time of consideration will not be eligible.

Tenn. Code Ann. § 40-36-106(a) (emphasis added). Subparts (a)(2) and (3) above disqualify the defendant because attempted rape of a child is classified as an "offense against the person." See Tenn. Code Ann. § 39-13-505; see State v. Boston, 938 S.W.2d 435, 438 n.5 (Tenn. Crim. App. 1996); State v. Clessie T. Jaco, No. 01C01-9802-CC-00091, slip op. at 9 (Tenn. Crim. App., at Nashville, Dec. 21, 1998), app. for perm. to appeal filed (Feb. 18, 1999); State v. Leonard Eugene Grant, No. 03C01-9212-CR-00441, slip op. at 4 (Tenn. Crim. App., at Knoxville, July 22, 1993). Because the offense involves sexual penetration, the defendant's crime is considered "violent." See Tenn. Code Ann. § 40-36-102(12). The defendant is

8

possibly eligible, however, under the "special needs" provision of the Act, which allows some individuals who commit violent crimes or crimes against the person to be placed on Community Corrections if they have special needs arising from mental health problems for which treatment is available. Tenn. Code Ann. § 40-36-106(c). The defendant, who would require intensive supervision, was described as a "fair" candidate for out-patient treatment program specializing in sexual offending. Yet he has a "significant" alcohol and drug abuse problem, as evidenced by mental evaluation and the number of prior convictions and charges which were alcohol related. The seriousness of the criminal charges continues to escalate. The probation violations demonstrate his inability to abide by conditions of release to the community. Based on these factors, we conclude that the defendant is not a favorable candidate for community-based treatment under the special needs provision. In our view, incarceration is warranted.

Accordingly, the judgment is affirmed.

_____
Gary R. Wade, Presiding Judge

CONCUR:

_____
James Curwood Witt, Jr., Judge

_____
Norma McGee Ogle, Judge

9